```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF MICHIGAN
 2                           SOUTHERN DIVISION

 3     UNITED STATES OF AMERICA,

 4                    Plaintiff,

 5     -v-                                     Case No. 24-20065

 6     EVAN DANIEL MERCER,

 7                    Defendant.
       _____/
 8
                             DETENTION HEARING
 9
                    BEFORE THE HONORABLE DAVID R. GRAND
10                    United States Magistrate Judge
                   Theodore Levin United States Courthouse
11                    231 West Lafayette Boulevard
                           Detroit, Michigan
12                         January 29, 2024

13     APPEARANCES:

14     FOR THE PLAINTIFF:     Diane Nicole Princ
                              DOJ-USAO
15                            Eastern District of Michigan
                              211 W. Fort Street
16                            Suite 2001
                              Detroit, MI 48226
17
       FOR THE DEFENDANT:     Michael A. Rataj
18                            500 Griswold
                              Suite 2450
19                            Detroit, MI 48226

20

21

22
       TRANSCRIBED BY:    Shacara V. Mapp, CSR-9305, RMR, FCRR, CRR
23                           www.transcriptorders.com

24
                  (Transcriber not present at live proceedings.
25                 Transcript produced from digital recording.)
```

1                          TABLE OF CONTENTS

2        MATTER                                              PAGE

3        DETENTION HEARING.......................................

4        WITNESSES:

5        None

6        **Government's Proffer** Ms. Princ:..........................   4
         **Defense's Proffer** Mr. Rataj:.............................   9
7        **Government's Argument** By Ms. Princ:.....................  11
         **Defense's Argument** Mr. Rataj:...........................  15
8

9        EXHIBITS RECEIVED:

10       None Offered............................................

11

12

13       Certificate of Reporter................................. 23

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    Detroit, Michigan
 2    January 29, 2024
 3    1:37 p.m.
 4                         *      *      *
 5            CASE MANAGER:  Court calls Case Number 24-30024, the
 6    United States of America versus Evan Mercer.
 7            MS. PRINC:  Pardon me, Your Honor.  On behalf of the
 8    United States, Diane Princ.
 9            THE COURT:  Thank you.  Good afternoon.
10            MR. RATAJ:  Good afternoon, Your Honor.  Mike Rataj
11    on behalf of Evan Mercer who stands to my left.
12            THE COURT:  All right.  Thank you.
13            Good afternoon, sir.  If you could, state your full
14    name, please.
15            THE WITNESS:  Evan Mercer.
16            THE COURT:  All right.  Thank you.
17            And I understand that today is the day and time set
18    for a detention hearing in this matter; is that correct?
19            MS. PRINC:  That is correct, Your Honor.  The
20    Government is ready to proceed.
21            MR. RATAJ:  So is the Defense, Your Honor.
22            THE COURT:  Okay.  All right.
23            Then I'll first hear a factual proffer by the
24    Government, followed by a factual proffer from Defense, and
25    then each side can commit argument.
```

```
 1              MS. PRINC:  Thank you, Your Honor.
 2                      GOVERNMENT'S PROFFER
 3              MS. PRINC:  I am proceeding via proffer today, and
 4    I'm seeking detention based on Defendant's risk of
 5    non-appearance and danger to the community.
 6              I also note that the defendant is charged with sex --
 7    sexual exploitation of children under 18, United States Code,
 8    Section 2251 (A) and (E).  And so, there is a rebuttable
 9    presumption that no condition or set of conditions can be put
10    into place that will re -- reasonably assure this defendant's
11    appearance or the safety of the community under 18 U.S.C.,
12    3142(e)(3)(E).
13              I tender the complaint, the Pretrial Services Report,
14    and the following facts:
15              The charged offense in this case, the investigation
16    into this defendant began in September of 2023, when the
17    defendant's ex-girlfriend reported to Ferndale Police that she
18    had observed screenshots of this defendant masturbating with
19    children on the website, Omegle, on her laptop.  At a certain
20    point in time, the ex-girlfriend and this defendant had lived
21    together, and the defendant's iPhone and iCloud were synced
22    with her computer.  And when she logged onto her computer, she
23    observed these screenshots that I will describe in detail in a
24    minute.
25              And just for Your Honor's -- just for the record,
```

1    Omegle is a website that is no longer in operation, but it was

2    in operation until last year.  And it allows users to

3    communicate online anonymously chatting with each other

4    without registering.

5            THE COURT:  Are they -- and they're able to see each

6    other?

7            MS. PRINC:  Yes, exactly.

8            So you'll have the person talk -- you're speaking

9    with, you'll be able to see each other and you can text back

10   and forth

11           THE COURT:  And it's completely random who you get

12   connected to?

13           MS. PRINC:  Yes.  In my understanding, you can

14   express --

15           THE COURT:  I've never -- I've never seen this thing.

16           MS. PRINC:  I've seen it a lot in exploitation cases

17   which is, I think, partly, why it was shut down.  It allowed

18   users across the world to communicate with other minors.  And

19   as I said, you do not have to register so it allowed a level

20   of anonymity, and protecting you from legal process and

21   discovery from law enforcement.

22           And so, as I said, the -- upon discovery of these

23   screenshots, the ex-girlfriend downloaded some of them, placed

24   them on a flash drive, and reported it to Ferndale Police.

25           Ferndale Police reviewed the flash drive.  And there

1  were three screenshots that I will detail for the record.  One

2  was a video.  And it appears that the user, later identified

3  as Defendant, had recorded this video on his own drive as he

4  was chatting with a minor.  The minor is visible.  She appears

5  to be a -- a girl of about 7 to 9 years old.

6          I do have a redacted screenshot of that text exchange

7  that the defendant had with this girl.  I've shared it with

8  the defense.  I can share it with Your Honor if you'd like,

9  but I can just describe it.

10          So you see in the screenshot, a photograph of this

11  defendant.  He's -- his face is visible.  It's clear it's him.

12  And then, you also see the minor child.  She's very obviously

13  below the age of 12, probably 7 to 9, and she is naked and

14  masturbating, inserting her fingers in her vagina.  And the

15  defendant is texting back and forth with her, directing her,

16  and encouraging her in that activity.

17          There were also two screenshots of Defendant chatting

18  with two under aged boys; one identified himself as 14 years

19  old, one identified himself as 15 years old.  It's the same

20  setup.  You can see the defendant, you can see his face, and

21  then you can also see just the genitalia of the underage

22  youths.  One of them is inserting a marker into his anus.  And

23  again, the defendant is chatting back and forth with the

24  youths, encouraging hem.

25          Ferndale detectives, after they reviewed the contents

1     of the flash drive, went to interview this defendant at his

2     apartment, and he made certain admissions that are relevant to

3     the investigation.  He acknowledged that the same

4     ex-girlfriend had sent him screenshots that she had shared

5     with Ferndale Police, and he identified himself as the -- as

6     the adult who appeared in those.

7              He admitted to the Ferndale detective that he had

8     chatted with minors on Omegle, and had masturbated with them.

9              At the time detectives seized his phone, they later

10    obtained a search warrant to go inside the phone.  The phone

11    was determined to contain 15 images of child sexual abuse

12    material, including prepubescent minors, -- that's minors

13    under the age of 12, -- engaged in sexual conduct, and being

14    sexually assaulted by adults.

15             The review of the phones and the other devices

16    collected in this case is still ongoing.

17             Now, this case was reported to the FBI very recently.

18    And once the FBI began investigating, our office became

19    involved, and we recently brought the charges.

20             With respect to the defendant's history and

21    characteristics, looking at the Pretrial Services Report,

22    while I acknowledge that Pretrial is recommending release in

23    this case, there are some -- some noteworthy facts within the

24    Pretrial Services Report that I think -- I contend, move in

25    favor of detention.

```
 1          The defendant, upon his release, it appears that he
 2   would return to live with his -- his parents.  It does --
 3   there's some question about what electronic devices he would
 4   have access to.  I know his cellphone was collected.  But, of
 5   course, anyone can access electronic devices very easily in
 6   our society.  And this is the kind of crime that can be
 7   committed just using an electronic device from home.
 8          And I'm not, at all, attacking the character of his
 9   parents.  I don't place any blame on them, but some of the
10   investigation indicated that some of these contacts with minor
11   occurred within their home.  And so, I don't -- this defendant
12   can commit this crime very easily just using electronic
13   devices.  And I do not believe he can be sufficiently guarded
14   by any adult if released into society.
15          I also note that his parents' residence is, as noted
16   in the Pretrial Services Report, is close to several schools,
17   daycares within a short distance.  And then it appears that he
18   has nephews who are underage who, because of their family
19   relation, of course, would be close to their grandparents.
20   And so I have a concern about his having access to his
21   nephews.
22          He's also currently unemployed.  And although he
23   denies to the Pretrial Services officer that he has mental
24   health issues, he did tell the Ferndale detective that he was
25   depressed, and that's sort of why he was contacting minors
```

1    online.  And so, I have concerns about his mental health and

2    the safety of -- I have concerns about the danger he poses to

3    himself if he's not under supervision.

4              And that concludes my factual proffer.

5              THE COURT:  All right.  Thank you.

6              MR. RATAJ:  Thank you, Your Honor.

7              THE COURT:  Go ahead.

8                         **DEFENSE'S PROFFER**

9              MR. RATAJ:  Let me start off by saying, Judge, that

10   we're not here to determine the guilt or innocence of my

11   client at this point in time.  My client is presumed to be

12   innocent, as Your Honor knows full well.

13             Your Honor is also very familiar with the Bail Reform

14   Act, which mandates that the least restrictive conditions or

15   combination of conditions reasonably necessary to ensure the

16   defendant's appearance in this court is required by 18 U.S.C.,

17   3142(c)(1)(B).

18             Moreover, Judge, in our society, liberty is the norm,

19   and detention prior to trial is the carefully limited

20   exception.  And Your Honor is familiar with the United States

21   versus Salerno, and the cases -- the progeny of cases from

22   that case.

23             We know that Congress envisioned the pretrial

24   detention of only a fraction of the accused individuals

25   awaiting trial.  And the structure of the statute mandates

1    every form of release be considered before detention be

2    imposed.

3          Now, the presentence investigation -- or the pretrial

4    report, Your Honor, is very detailed, and the highlights are

5    as follows:

6          First of all, let me -- before I get into that, the

7    weight of the evidence, and the case law is clear on this, the

8    weight of the evidence is the least important factor to be

9    considered as to whether or not a defendant should be granted

10   bond.  We're not here to decide the guilt or innocence of

11   Mr. Mercer for today's hearing.  This is something that the

12   Government routinely does, but it is the least important

13   factor.

14         We know that Mr. Mercer has no criminal history.  We

15   know that Mr. Mercer is a college graduate.  We know that both

16   of his parents who are here in court today, have agreed to act

17   as third-party custodians.  And we know by looking at the --

18   by Pretrial Services Report, that they do recommend a bond in

19   this case.  And they set forth 21 separate conditions of --

20   that should be imposed by the Court if bond is granted.  And I

21   have absolutely not one issue with any of these 21 conditions.

22         So the bottom line is that there is a combination of

23   conditions that can be cobbled together to, one, assure the --

24   or protect the community, and assure Mr. Mercer's appearance

25   in court.

1           So that -- Your Honor's familiar with the law.

2     Whether they think he's guilty or not is of no moment to this

3     hearing.  And so, the bottom line is, is we've got a very

4     detailed pretrial report, 21 conditions, no issues with that

5     which include house arrest, which include GPS monitoring.  And

6     most importantly, my client has been in counseling.  And I

7     think it's important that he continue with that counseling.

8     He's been in counseling since, I believe, it said September.

9     And it's important that he continue with that.

10          He's going to be staying with his mother and father

11    who are in the courtroom today.  They've agreed to act as

12    third-party custodians.  Mr. Jackson, wherever he is, has

13    agreed to interview the parents, and he has come up with a

14    very, very, I would call it, restrictive combination of

15    conditions which, of course, we have absolutely no problem

16    with.

17          So I would respectfully request that Your Honor

18    follow Pretrial's recommendation and impose these 21

19    conditions, and give Mr. Mercer a $10,000 bond unsecured.

20          Thank you.

21          THE COURT:  All right.  Thank you.

22          Counsel, you can go ahead.

23          MS. PRINC:  Thank you, Your Honor.

24                     **GOVERNMENT'S ARGUMENT**

25          BY MS. PRINC:  Your Honor, as I mentioned, there is a

 1    rebuttable presumption.  And even if Your Honor has determined

 2    that that presumption has been overcome, I submit that the

 3    totality of the 3142(g) factors favors detention in this case.

 4         The nature and circumstances of the offense are very

 5    serious.  This is a defendant who was contacting multiple

 6    minors including young -- a minor as young as, apparently, 7

 7    or 9 years old.

 8         THE COURT:  And how -- I don't understand in terms of

 9    the technology, how does it even work that you would meet a

10    minor on this thing?  I mean, I didn't even -- like, it's

11    pretty standard for kids to not even get a cellphone until

12    they're, like, 13.  And these kids -- the one was, you said, 7

13    to 9.  And so, I'm just imagining -- and as I said, I don't

14    know anything about this platform, never heard of it really,

15    never -- certainly never seen it.  But I would imagine that if

16    you are just logging on to it looking for underaged people,

17    that the underage population would be minuscule on -- on this

18    thing compared to everyone else that's on it.

19         So I don't -- I'm just trying to understand how it --

20    how this defendant even was able to get access to these

21    minors, if you know.

22         MS. PRINC:  From my understanding, generally with how

23    this works, it's -- it's similar to a social media platform

24    where you can seek out other people to chat with.  I don't

25    know what particular search terms he used to find this target

1    population, but we have screenshots of him clearly contacting

2    minors and engaging in sexual conversations with them, and

3    then, himself, screenshotting those.  In fact, of the minor

4    girl, it appears he took a video recording of that interaction

5    to save for later.

6            And so, it's very alarming indeed, Your Honor.  And

7    as I mentioned, this website is no longer functioning, I

8    think, given how it was used and how many predators were able

9    to make this use of it.  And so, that goes to the nature and

10   circumstances of this offense and how dangerous it is.

11           While on paper, this defendant does not appear to be

12   a danger in the community, predators like him hide behind the

13   -- the public image of a musician without a criminal history.

14   While at home, he's able to log in at night and have these

15   conversations with minors and exploit them and capture those

16   images and use them later in time.

17           THE COURT:  All right.  And one -- one other question

18   I had about the facts is that this -- it looked to me like

19   this incident with the minor female victim was from 2021.

20           Is that correct?  Did I understand that correctly?

21   This is paragraph 6b.  It makes a reference, it looks like, to

22   March 19th of 2021.

23           MR. RATAJ:  In the criminal complaint, that's

24   correct, Your Honor.

25           MS. PRINC:  Oh, if I may, Your Honor.  So 6a is the

1     paragraph describing the video with the minor girl.  And that
2     does not have a file date.  We don't know the exact date.  I
3     would say it's probably a fair guess given the entirety of the
4     investigation, that that file was created around the same time
5     as the others which are described in 6b and 6c.  And so, those
6     screenshots are March of 2021.
7          But I will also note that the defendant still had
8     these files on his iCloud when his ex-girlfriend found them
9     and reported them in September of 2023.  And he still, when
10    his phone was recovered in September of 2023, as I mentioned,
11    later, when it was searched pursuant to a search warrant, it
12    contained 15 files of similar material that he had downloaded
13    from the internet showing prepubescent minors being sexually
14    assaulted.  So this is an interest of his that has continued.
15         THE COURT:  All right.  Thank you.
16         MS. PRINC:  And so, just -- in answering your
17    questions, I think those are my arguments in favor of
18    detention in this case, the nature and circumstances of the
19    offense, the seriousness of the offense, the weight of the
20    evidence of his danger, given that he can access minors
21    online.  I recognize that he has no criminal history, but I
22    have concerns about him being released to a home where he
23    could have access to electronic devices, could reach out to
24    other minors.  There's just no way to completely bar him from
25    using electronics.

1          So I submit that no condition or set of conditions

2     can be imposed to assure the safety of the community.

3          THE COURT:  All right.  Thank you.

4          Counsel --

5          MR. RATAJ:  Well, apparently -- yeah.

6                        **DEFENSE'S ARGUMENT**

7          MR. RATAJ:  Apparently, with all due respect to the

8     AUSA, apparently, Mr. Jackson, who has done a detailed

9     investigation into Mr. Mercer, his parents, the home

10    environment, and everything else, he does feel that there is a

11    combination of conditions that can be imposed on my client to

12    assure the safety of the community and to assure his

13    appearance in court.

14         And again, I'll say it one more time, that's a nice

15    closing argument for a trial.  That's not what we're here for.

16    We're here to determine whether or not he's a danger to the

17    community.

18         By their own admission, the -- the quote on quote,

19    online site that she sites isn't even in existence anymore.

20    And I know that Mr. Jackson, in talking to his parents, said

21    do you have any problem if we come in randomly and check any

22    of your electronics and, of course, they said no, we have

23    absolutely no problem with that.  And he's not to have any

24    electronics in his possession.

25         So again, 21 -- and I've been doing this a long time,

1    Judge.  I've never seen one with 21 different conditions.  And

2    I've done a few of these cases before, and I've never had a

3    client not get a bond.

4          He is presumed to be innocent despite what the

5    Government says.  But the issue of the day is can -- are there

6    a combination of conditions that, again, assures the safety of

7    the community and ensures his appearance in court.  According

8    to Pretrial Services, there are.

9          So I would respectfully request that Your Honor adopt

10   the Pretrial Services recommendation.

11         Thank you.

12         THE COURT:  All right.  Thank you.

13         Well, Mr. Mercer, the Court is Governed by the Bail

14   Reform Act which provides the factors that the Court has to

15   consider in determining whether you should be released on bond

16   or detained pending the trial in this case.  And in most cases

17   in the federal system, defendants are to be awarded a bond as

18   a -- kind of a standard in the court.  And it is the rare case

19   that defendants are to be held pending the resolution of their

20   case.  However, in certain types of cases, including the

21   charges that you are facing, Congress has determined that

22   instead of a presumption in favor of release on a bond, there

23   should be a presumption in favor of detention.

24         There's very clearly probable cause here that the

25   defendant committed the charge -- the offenses for which he's

1    charged, which means that the presumption in favor of

2    detention clearly applies because it applies to crimes of

3    sexual exploitation against minor victims.  And so, we kind of

4    start off with the fact that there is this presumption.  It's

5    only a presumption.  It doesn't end the analysis at all.

6            But even if the defendant can rebut the presumption,

7    it's still a factor for the Court to take into consideration

8    that the presumption exists at all.

9            Moving on to the -- to the factors, the first is the

10   nature and circumstances of the offense charged.  And here,

11   it's extremely disturbing.  All of these cases are -- each

12   kind of stand on their own and each have their own facts and

13   circumstances.  And in this case, I just think that the facts

14   are just extremely egregious.  This defendant, somehow, on

15   this platform, which, as I said, I've never seen or used so I

16   don't -- I can't say that I, you know, really understand how

17   it operates, but somehow, this defendant became connected to,

18   in the first instance, it looks like a 7- to 9-year-old girl.

19   And at some point in that communication, she ends up naked and

20   engaging in sexual activity with the defendant.  And it's a --

21   you know, just this young child engaging in this conduct with

22   this -- with this defendant.

23           And there are two other instances of a 14-year-old

24   boy and a 15-year-old boy, similarly, engaging in this type of

25   conduct.  And so, I think that the nature and circumstances of

1     the offenses charged are just extremely serious and egregious

2     and, therefore, very strongly favor detention.

3              Also, the fact that this can be done remotely and was

4     done remotely is another consideration in terms of the -- the

5     nature and circumstances of the offenses charged.

6              The second factor is the weight of the evidence

7     against the defendant.  And as Counsel indicates, that's not

8     the weight of the evidence of the defendant's guilt or

9     innocence.  The defendant is absolutely presumed innocent.

10    And so, that is obviously for -- at the forefront of my

11    thought process here.  But the evidence of dangerousness often

12    times overlaps with evidence of guilt or innocence.  And I'm

13    only looking at it in terms of the evidence of it -- of the

14    danger here.

15             And I just am -- it's just shocking to see a grown

16    man engaging sexually like this with a 7-to 9-year-old girl

17    and the male victims who were somewhat older but, you know,

18    still -- still minors.  And to be engaging in that type of

19    conduct is just a tremendous indicator of the danger that the

20    person presents because it shows that the person is willing to

21    harm a child for his own gratification.

22             And I just think it just shows an extreme callousness

23    of this defendant towards -- towards others, and especially

24    towards children.  And so, I think that second factor very

25    much favors detention.

1        The third factor is the history and characteristics

2    of the defendant.  He -- I take into account he has no

3    criminal history, and he had a very good thing going for him

4    in terms of his participation in his band.  And the band is

5    obviously doing well.  It also, though, indicates in the

6    Pretrial Services Report that the defendant is no longer a

7    part of the band, and he no longer has that income.

8        And he has said he doesn't have mental health issues,

9    but he told the authorities when he was apprehended, that he

10   engaged in this conduct because of depression.  And I imagine

11   that his current circumstances are going to make him equally,

12   if not far more depressed and having those sort of mental

13   health challenges.

14       And so, that poses a very serious concern, too, that

15   if the defendant -- if that's how he acted when he was under

16   the stress of the pandemic or the depression that he was

17   experiencing, I don't see how things are any different right

18   now.  In fact, it seems much worse, given the -- given the

19   seriousness of these charges, the length of time that he would

20   face if he were to be convicted.

21       He does have family support and, you know, I take

22   that into account.  And, but as I said, in this type of case

23   where the defendant's access, it doesn't have to be -- it

24   doesn't have to be directly in person, he's able to do this

25   remotely over the internet, far and wide.

```
 1            And even though this particular program apparently no
 2    longer exists, it's just common knowledge how easy it is for,
 3    through social media and other platforms for this type of
 4    interaction to -- to take place by somebody who wants it to
 5    take place.  And this defendant clearly has a problem with it
 6    because in addition to these instances from -- it was some
 7    time ago, which I think is a consideration for the Court.
 8    It's something for the Court to take into account.  But then,
 9    the Government has proffered that in addition to these
10    instances, the defendant had on his phone, far more recently,
11    15 additional images of child sexually abusive material.
12            So he clearly has -- it isn't like, okay, he had some
13    -- this issue and he, through treatment, was able to overcome
14    it and he's not presently a danger.  He still has this -- this
15    serious attraction to minor sexual encounters or images.  And
16    that just poses a very big danger to the community.
17            The parents' house, also, in addition to him being
18    able to access victims remotely through any of the kind of
19    normal technologies, which the parents do have in the home, it
20    indicates that the home is close to schools and daycares.  And
21    it's not at all unusual, especially in the spring, for kids to
22    come, like, with Girl Scout cookies and can drives and just
23    other -- other types of potential interactions.
24            And when an individual shows that he's willing to
25    actively harm a young child like that, it just, to me, poses a
```

1    very strong danger to the community.

2            And the defendant, obviously, as I said, is presumed

3    innocent and has -- and has rights in terms of the evaluation

4    of all of this information and all of the bond conditions that

5    have been proposed by Pretrial Services, which I've just

6    considered.  As I said, I just see it differently in terms of

7    his extreme dangerousness based on the information before the

8    Court.

9            And so, that is going to be the Court's ruling in the

10   matter is that the Government has shown by clear and

11   convincing evidence that there's no condition or combination

12   of conditions that can reasonably assure the community's

13   safety.

14           I understand that's my analysis of it.  I understand

15   it differs from what Pretrial Services is recommending.  And

16   there are opportunities for appeal.

17           Mr. Mercer, if you think that my decision in this

18   matter is incorrect, and you have an attorney who's obviously

19   working very hard for you and who could help you with an

20   appeal if that's what you wish to do.  But as I said, that's

21   just how I see the factors lining up against the evidence in

22   this matter.

23           I'll issue a written decision on this by end of the

24   day tomorrow.  And as I said, if you do wish to appeal, that's

25   your right and you can ask your attorney to assist you with

 1   that.

 2          MR. RATAJ:  We're going to appeal it, Judge, I mean,

 3   believe me.

 4          THE COURT:  All right.  That's fine.

 5          MR. RATAJ:  Because I mean, the Court basically has

 6   found my client to be guilty.  And they haven't even given any

 7   evidence as to when those images were put on his phone.  I

 8   mean, they could have been on there and he could have forgot

 9   about it.

10          But, you know, again, here we are in court at a

11   detention hearing where they make a closing argument, and the

12   Court buys into it.  And that's not the consideration.  So --

13          THE COURT:  I'm not buying into anything.

14          MR. RATAJ:  -- we're going to appeal it.

15          THE COURT:  I'm not -- you can appeal it.  I'm not

16   buying into anything.  All I'm doing --

17          MR. RATAJ:  Twenty-one combinations --

18          THE COURT:  -- is evaluating the evidence.

19          MR. RATAJ:  Twenty-one conditions certainly can

20   protect the community.  Absolutely protect the community.

21          And this thing about Girl Scouts and all this other

22   stuff is just more -- it's just piling and speculation.

23   There's no evidence of that.

24          THE COURT:  All right.  Well, I'll make my written

25   ruling as I said.  And if you'd like to appeal it, sir, please

```
 1    --
 2              MR. RATAJ:  Oh, we're going to appeal it.
 3              THE COURT:  That's your right.
 4              All right.  Thank you.
 5              MS. PRINC:  Thank you.
 6              THE COURT:  All right.  We need a PE date, please.
 7              CASE MANAGER:  February 9th at 1:00 p.m.
 8              THE COURT:  All right.  Thank you.
 9              CASE MANAGER:  Court is adjourned.
10              THE COURT:  All right.  Thank you, all.
11         (The proceeding was adjourned at 2:07 p.m.)
12                        *     *     *
13                   C E R T I F I C A T E
14      I certify that the foregoing is a correct transcription of
15    the record of proceedings in the above-entitled matter.
16
17    S/ Shacara V. Mapp_____            03/01/2024_
18    Shacara V. Mapp,                       Date
19    CSR-9305, RMR, FCRR, CRR
20    Official Court Reporter
21
22
23
24
25
```