**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**            **Case No. 24-cr-20065**
                                 **Hon. Terrence G. Berg**

**vs.**

**EVAN MERCER,**

      **Defendant.**

_____

**DEFENDANT'S SENTENCING MEMORANDUM**

**I.**   **INTRODUCTION**

      EVAN MERCER is scheduled to be sentenced before this Honorable Court on May 8, 2025, at 2:00 p.m. Mr. Mercer pleaded guilty pursuant to a Rule 11 Plea Agreement to Count 1 of the Indictment which charged Mr. Mercer with Sexual Exploitation of a Child in violation of 18 U.S.C. §2251(a).

      This Court knows that calculating the correct guideline range is not the end of the sentencing inquiry. "The guidelines are not only not mandatory on sentencing courts they are also not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 351 (2009); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). The guidelines are an "initial benchmark" or "starting point," *Gall* at 49, but there is no "thumb on the scale for

the guideline range." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007). While the sentencing guidelines remain an important consideration, they are just one of the numerous factors that a District Court must consider when sentencing a defendant. *U.S. v. McBride*, 434 F.3d 470 (6th Cir. 2006). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall, supra*, at 52.

The Supreme Court has empowered the District Courts to consider how much weight to give the sentencing guidelines when imposing a sentence. The Supreme Court recognizes that all sentencing guidelines do not come before the courts deserving the same degree of deference. While many guidelines are published by the United States Sentencing Commission after study and empirical analysis, others are published due to the demands of Congressional action. That was one of the reasons the Supreme Court held that the sentencing guidelines are advisory and sentencing judges could disagree with the sentencing guidelines on policy grounds. *See*, *Gall*, *supra*, and *Kimbrough*, *supra*.

## II.   <u>MR. MERCER'S GUIDELINE RANGE IS GROSSLY OVERSTATED</u>

Pursuant to his Rule 11 Plea Agreement, Mr. Mercer pleaded guilty to Count 1 of the Indictment, which charged Mr. Mercer with violating 18 U.S.C. §2251(a). This count carries a mandatory minimum sentence of 15 years.

The Government and the Probation Officer calculated Mr. Mercer's guideline range to be 360 months to life. This calculation was based on a Total Offense Level of 42 and a Criminal History Category of I. This draconian guideline calculation was driven by a number of enhancements under U.S.S.G. §§2G2.1(b)(1)(A); 2G2.1(b)(2)(A); 2G2.1(b)(6)(B)(i) and 4B1.5(b)(1). *See* PSIR, ¶¶23-34.

Counsel has objected to the 2-point enhancement for use of a computer per §2G2.1(b)(6)(B)(i) and the 5-point enhancement per U.S.S.G. §4B1.5(b)(1). The objections will not be repeated here. Counsel's objections are set forth in the Addendum to the PSIR dated March 12, 2025.

The objections notwithstanding, Mr. Mercer submits that this Court should discount the guideline range in fashioning Mr. Mercer's sentence. The guideline scheme before this Court falls into the category of guidelines constructed to comply with Congressional mandates, not study and empirical research.

Unlike most sentencing guidelines, which arose from empirical studies and objective findings by the Sentencing Commission, U.S.S.G. §2G2.1 was created as a result of the instructions by Congress in the Adam Walsh Act, Pl 109-248, eff.

July 27, 2006, which directed the Sentencing Commission to create guidelines implementing enhanced penalties for existing offenses, insuring that the maximum guideline range is reached in virtually every case.

Federal courts have declared that the sentencing guidelines for child pornography offenses are fundamentally different from guidelines for other offenses that can lead to unreasonable sentences that are inconsistent with the requirements of 18 U.S.C. §3553(a). See, *United States v. Hanson*, 561 F. Supp. 2d 1004 (E.D. Wis. 2008); *United States v. Grober*, 595 F. Supp. 2d 382 (D. N.J. 2008); *United States v. Dorvee*, 604 F.3d 84, 94 (2nd Cir. 2010).[1]

Rather than developing the child pornography guidelines based on empirical data, as is typically done, Congress directed the Sentencing Commission to amend the child pornography guidelines, making them harsher, despite the objections of the Sentencing Commission. *Dorvee*, *supra*, at 95; *see also,* United States Sentencing Commission, The History of the Child Pornography Guidelines. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/sex-offenses/20091030_History_Child_Pornography_Guidelines.pdf By way of example, the two-level computer enhancement has become the subject of much controversy given the fact that it applies to practically all child

---

[1] *See also*, *United States v. Diaz*, 720 F. Supp. 2d 1039 (E.D. Wis. 2010); *United States v. Riley*, 655 F. Supp. 2d 1298 (S.D. Fla. 2009); *United States v. McElheney*, 630 F. Supp. 2d (E.D. Tenn. 2009); *United States v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa 2009).

pornography cases and fails to distinguish serious commercial distributors of online pornography from the typical user. *Dorvee, supra*, at 95.

In 2010, the United States Department of Justice expressed its own concerns to the Sentencing Commission about the guidelines for child exploitation crimes:

> "We believe the Commission should complete its review of the sentencing guidelines applicable to child exploitation crimes and prepare a report to Congress that might include recommendations for reforming the current child exploitation guidelines. The goal of any such reform would be to update the guidelines to address changing technology and realities surrounding these offenses, improve the consistency of sentences across child exploitation crimes, and ensure that the sentences for certain child exploitation offenses adequately reflect the seriousness of the crimes.
>
> We think the report to Congress ought to recommend legislation that permits the Sentencing Commission to revise the sentencing guidelines for child pornography offenses and that suggests what any revised guidelines might look like. Over the last two decades, Congress has directed the Sentencing Commission to amend the guidelines for child pornography offenses on a number of occasions…Collectively in these bills, Congress directed the Sentencing Commission to increase the base level and to add certain enhancements for the use of a computer in the commission of the crime and for the number of images involved in the crime.
>
> We believe changes in the use of technology and in the way these crimes are regularly carried out today suggest that the time is ripe for evaluating the current guidelines and considering whether reforms are warranted. Consideration ought to be given to updating many aspects of the child pornography sentencing guidelines to better calibrate the severity and culpability of defendants' criminal conduct with the applicable sentencing ranges."

*Letter To The Honorable William K. Sessions III, United States Sentencing Commission From United States Department of Justice*, *Criminal Division, Office*

5

*of Policy and Legislation*, Dated: June 28, 2010, available at: http://www.sentencing.typepad.com/files/annual_letter_2010_final_062810.pdf.

The fact that the Sentencing Commission, the Judiciary, and the Department of Justice all agree that the guidelines for these offenses need to be reevaluated strongly suggests that the sentences based on these guidelines are unreasonable.

In *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), the Second Circuit found that, rather than establishing meaningful sentencing distinctions among defendants, the §2G2.2 guideline enhancements were "all but inherent to the crime of conviction." *Id*. at 197. The Second Circuit noted "[a]dhering to the Guidelines means that an ordinary first-time offender is therefore likely to qualify for a sentence … approaching the statutory maximum," a result that is "fundamentally incompatible with §3553(a)." *Id*. at 186. Therefore, the application of the §2G2.2, "unless applied with great care, can lead to unreasonable sentences." *Id.*

On February 27, 2013, the Sentencing Commission released a report to Congress on the child pornography sentencing guidelines ("2013 Report"). See *United States Sentencing Comm'n, Special Report to Congress: Federal Child Pornography Offenses* (Dec. 2012). https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses.

In its 2013 Report, the Commission concluded that "the current non-production guideline warrants revision" because (1) the enhancements do not

account for an offender's use of modern technology and are, thus, "outdated and disproportionate"; and (2) "[t]he current guideline produces overly severe sentencing ranges for some offenders, unduly lenient ranges for other offenders, and widespread inconsistent application."

The 2013 Report questions the appropriateness of the current guidelines scheme in §2G2.2 for non-production cases where the offender used computers and the Internet to receive and distribute pornography. The report notes that courts criticize the current child pornography guidelines because they are influenced by congressional directives, "fail[] to reflect the Commission's traditional institutional expertise," and are "not based on empirical evidence."

The guideline calculation in this case shows how the guideline methodology of mechanically piling on numbers to get to the highest number possible is of no use in calculating an appropriate sentence where the goal of sentencing should be "sufficient but not greater than necessary." In the final analysis, the enhancements should not be accorded deference because their application carries a significant risk of producing a sentence "greater than necessary to provide just punishment." *Hanson, supra*, at 1008.

### III. <u>APPLICATION OF THE SENTENCING FACTORS PURSUANT TO 18 U.S.C. §3553(a)</u>

The United States Code is quite explicit about the role of 18 U.S.C. §3553(a) in sentencing determinations.  18 U.S.C. §3582 specifically states:

7

The court, in determining whether to impose a term of imprisonment and, if a term of imprisonment is to be imposed in determining the length of this term, *shall consider* the factors set forth in section 3553(a) to the extent they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation. (Emphasis added).

Mr. Mercer respectfully requests that the Court consider the following 3553(a) factors and impose a mandatory minimum sentence of 15 years.

## A. NATURE AND CIRCUMSTANCES OF THE OFFENSE PURSUANT TO 18 U.S.C. §3553(a)(1)

Mr. Mercer does not take issue with the circumstances of the offense. Mr. Mercer is remorseful, repentant, embarrassed and feels horrible for the children that were involved in his conduct. He makes no excuses for what he did.

The Court should take note that when confronted by the Ferndale Police about what was found on his ex-girlfriend's computer, Mr. Mercer, without an attorney, admitted to what he had done. Moreover, Mr. Mercer entered a timely plea and has taken full responsibility for his conduct.

## B. HISTORY AND CHARACTERISTICS OF THE DEFENDANT PURSUANT TO 18 U.S.C. §3553(a)(1)

The Offender Characteristics reported at paragraphs 41 through 63 of the PSIR are an accurate recitation of Mr. Mercer's personal and family data, his physical condition, his mental and emotional health, his lack of substance abuse, his education, employment history and financial condition.

8

Mr. Mercer was born on June 11, 1993. His father is retired, and his mother is an occupational therapist. Mr. Mercer's mother is currently undergoing chemotherapy treatment for breast cancer. As Mercer stated during the probation interview, he has a "great" relationship with his parents. Mr. Mercer's mother and father have remained supportive and have been in regular contact with him since his detention in this case.

Mr. Mercer has two older brothers, ages 37 and 35. Mr. Mercer has always had a strong relationship with his brothers. They also have remained supportive despite the circumstances that have brought Mr. Mercer before this Court.

Mr. Mercer graduated in 2011 from Stephenson High School in Livonia. He graduated with a 3.1 GPA. Mr. Mercer attended Wayne State University and graduated in 2017 with a bachelor's degree in Music/Jazz Studies. His GPA was 3.03.

Ever since he was a young boy, Mr. Mercer has had a passion for music. He began playing the piano when he was 5 years old. During his school years, Mr. Mercer was involved in the school orchestra, the symphony band, the marching band, the jazz band, drumline and choir. Mr. Mercer also played soccer and basketball. He also loves to play chess.

After high school, and during college and after obtaining his college degree, Mr. Mercer worked as a freelance musician. Mr. Mercer would play at weddings

and would sit in as a studio musician. Mr. Mercer was also in a rock band called "Mac Saturn." He was the keyboard player and backup vocalist. At the time of his arrest, the band was gaining notoriety. Mac Saturn was opening for bigger bands in the United States and Canada. Because of his arrest and prosecution, the band has restructured and rebranded.

Attached as Exhibits 1 through 9 are character letters from family and friends. The content of these letters will not be repeated here. Counsel knows that the Court will read the letters.

Nevertheless, the attached letters establish a common theme regarding Mr. Mercer's personality traits. Mr. Mercer is loved, and he has a very strong support system. Mr. Mercer does not have a malicious bone in his body. He is described as "a sweet, happy, joyous, positive, friendly, outgoing, thoughtful human who loves his family and friends." Mr. Mercer is further described as "kind, considerate and display[s] a true gentleness of spirit." It is clear that Mr. Mercer is not evil. Although the conduct that brings him before this Court is abhorrent and serious, those that know Mr. Mercer the best know that he is not a monster. On the contrary, to the people that really know Mr. Mercer, he is sweet, polite and funny. He has empathy for those less fortunate. He is a gifted musician who is always willing to make people smile with a song. Mr. Mercer is a loving son, brother, grandchild, uncle, nephew, cousin and friend.

On June 7, 2024, Mr. Mercer was evaluated by Matthew D. Rosenberg, LMSW. Mr. Rosenberg is a psychotherapist with 30 years of clinical practice and who specializes exclusively in the assessment and treatment of sexual abuse and deviancy. Mr. Rosenberg has been qualified as an expert in the areas of sexual abuse, psychosexual evaluation, risk assessment and forensic protocol in both state and federal courts.

Mr. Rosenberg administered a number of tests and tools during his evaluation of Mr. Mercer. Mr. Rosenberg has prepared a report that will not be repeated here. Mr. Rosenberg's overall assessment is that Mr. Mercer "is a low risk for engaging in criminal sexual behaviors in the future." Additionally, Mr. Rosenberg recommended that Mr. Mercer initiate specialized individual therapy. (See Exhibit 10 – Filed Under Seal).

### C.   THE NEED FOR THE SENTENCE IMPOSED PURSUANT TO 18 U.S.C. §3553(a)(2)(A)-(D)

Mr. Mercer's positive characteristics and Mr. Rosenberg's Report make it clear that respect for the law is not an issue and does not need to be a significant factor in determining the appropriate sentence in this case. But for this case, Mr. Mercer has been a law-abiding and productive member of the community. A sentence of 180 months is sufficient to respect the seriousness of Mr. Mercer's conduct, promote respect for the law and provide just punishment.

1.    **Seriousness of the Offense, Respect for Law and Just Punishment**

Section 3553(a)(2)(A) requires the Court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." A sentence that is excessive in light of the seriousness of the offense promotes disrespect for law and provides unjust punishment. In August of 2003, Justice Anthony Kennedy gave a speech at the ABA Annual Meeting in San Francisco where he stated:

> Our resources are misspent, our punishments too severe; our sentences too long . . . the sentencing guidelines are responsible in part for the increased terms. . . [and they] should be revised downward.

On February 14, 2007, Justice Kennedy again addressed this issue when he testified before the Senate Judiciary Committee and stated:

> Our sentences are too long, our sentences are too severe; our sentences too harsh . . . there is no compassion in the system. There's no mercy in the system.

In *United States v.  Bannister*, 786 F. Supp. 2d 617 (E.D.N.Y. 2011), the Court addressed the length of the prison sentences in the United States:

> The increased prison population is due in large part to longer sentences. For the same crimes, American prisoners receive sentences twice as long as English prisoners, three times as long as Canadian prisoners, four times as long as Swedish prisoners. Yet these countries' rates of violent crime are lower than ours, and their rates of property crime are comparable.

12

When Congress set the 15-year mandatory minimum sentence, it knew that the minimum sentence was a possible sentence. Its enactment means Congress believed that where only the elements of the offense were established, the statutory minimum was sufficient to promote respect for the law, regardless of the guideline range.

When considering what is "just punishment", this Court should also consider that, for Mr. Mercer, a 15-year prison term will be just the beginning. Mr. Mercer will also be punished by mandatory supervised release of at least 5 years, up to life.

Supervised release is an additional punishment separate from incarceration. *United States v. Reese*, 71 F.3d 582, 587-588 (6th Cir. 1995). Mr. Mercer's supervised release will include mandatory registration under both federal and state sex offender registry regimes, which the Sixth Circuit has found to be another form of punishment. See, *Does v. Snyder, et al*, 834 F.3d 696 (6th Cir. 2016). Presently, Michigan imposes at least 25 years of SORA registration.

SORNA/SORA registration imposes onerous restrictions on a person's life: restrictions on residence and location, warrantless searches of an offender's residence, seizure of his phones and computers, restrictions on computer use, and compliance with treatment and counseling. The Sixth Circuit made the following observations about the scope of current sex offender laws:

> A regulatory regime that severely restricts where people can live, work, and "loiter," that categorizes them into tiers ostensibly

corresponding to present dangerousness without any individualized assessment thereof, and that requires time-consuming and cumbersome in-person reporting, all supported by—at best—scant evidence that such restrictions serve the professed purpose of keeping…communities safe…SORA brands registrants as moral lepers solely on the basis of a prior conviction. It consigns them to years, if not a lifetime, of existence of the margins, not only of society, but often, as the record in this case makes painfully evident, from their own families, with whom, due to school zone restrictions, they may not even live. It directly regulates where registrants may go in their daily lives and compels them to interrupt those lives with great frequency in order to appear in person before law enforcement to report even minor changes to their information.

*Id.* at 705.

Given this bleak "noncustodial" future, a 15-year custodial sentence is adequate punishment for Mr. Mercer.

## 2.   <u>Deterrence to Criminal Conduct</u>

Section 3553(a)(2)(B) requires the Court to consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct." the facts of Mr. Mercer's case do not suggest that a guideline sentence is necessary to deter Mr. Mercer from engaging in future criminal conduct.

Insofar as the statute instructs the Court to consider the need for this sentence to act as a general deterrent to others, there is no evidence, empirical or otherwise, that a guideline sentence in this case would deter others. The United States Sentencing Commission has continued to study the theory of general deterrence and has encouraged research on the subject. Empirical research has

14

shown that while certainty has a deterrent effect, "increases in severity of punishment do not yield significant (if any) marginal deterrent effects". *Michael Tonry, Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels … reached that conclusion, as has every major survey of the evidence." *Id*. See also, Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-448 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.). Therefore, this Court should find that a 180-month prison sentence is adequate for purposes of general deterrence.

### 3.   Protection of the Public From Further Crimes of the Defendant

Section 3553(a)(2)(C) requires the Court to consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." This purpose has to do with both the defendant's risk of recidivism and the danger posed by the defendant, if any. It "is particularly important for those offenders whose criminal histories show repeated serious violations of the law." S. Rep. No. 98-225 at 76 (1983).

A sentence of 180 months will provide adequate protection of the public. If for no other reason, a mandatory minimum sentence will remove Mr. Mercer from the community for almost 15 years.

Further, Mr. Rosenberg conducted a psychosexual evaluation and risk assessment of Mr. Mercer. As stated herein, Mr. Rosenberg found a low level of risk. Given the length of the sentence Mr. Mercer must serve, and assuming appropriate counseling while in BOP custody, it is clear the risk posed by Mr. Mercer is low. The mandatory minimum sentence, therefore, is adequate.

### 4.   To Provide Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment

Section 3553(a)(2)(D) also mandates that the Court "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." The relevant statute and case law make clear that prison is not a means of providing treatment. *Tapia v. United States*, 564 U.S. 319 (2011); 28 U.S.C. §994(k) ("The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.").

According to the evaluations and assessments provided by Mr. Rosenberg, Mr. Mercer will benefit from a focused course of treatment. While counsel believes prison is the least efficient, most expensive place for treatment, the mandatory minimum sentence compelled here obviates that discussion. Having

16

said that, it appears from Mr. Rosenberg's report that the mandatory minimum sentence is sufficient to achieve this end as well.

As the PSIR noted, Mr. Mercer welcomes treatment. But if the current BOP Internet Facilitated Sexual Offending policies remain in effect http://www.atsa.com/internet-facilitated-sexual-offending, Mr. Mercer will not receive any targeted treatment or counseling until the last 36 months of his prison sentence. If treatment is a goal for Mr. Mercer, a 15-year sentence, the shortest available, is the best first step toward that goal.

### D.   THE KINDS OF SENTENCES AVAILABLE PURSUANT TO 18 U.S.C. §3553(a)(3)

This Honorable Court has the unfettered discretion to impose a mandatory minimum sentence. For all the reasons set forth herein, this is the appropriate sentence in this case.

### E.   THE SENTENCING RANGE SUGGESTED BY THE SENTENCING GUIDELINES PURSUANT TO 18 U.S.C. §3553(a)(4)

As set forth in Section II, supra, the guideline range is grossly overstated. A sentence of 180 months is appropriate in this case. This Court should give minimal, if any, weight to the guideline range in its analysis of the §3553(a) factors as they apply to Mr. Mercer's sentence. *See, United States v. Aldelson*, 441 F.Supp.2d 506, 514 (S.D.N.Y. 2006) (citing Kate Stith & Jose A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* (1998).

**F.      ANY   PERTINENT   POLICY   STATEMENT   FROM   THE SENTENCING   COMMISSION   PURSUANT   TO   18   U.S.C. §3553(a)(5)**

See Section II, supra.

**G.      THE    NEED    TO    AVOID    UNWANTED    SENTENCING DISPARITIES PURSUANT TO 18 U.S.C. §3553(a)(6)**

As the JSIN notes, the JSIN should not be seen as a recommendation of the appropriate sentence. Nor does the information provided reflect the Commission's position regarding the weight to be given, if any, to the above sentencing information in a court's determination of the appropriate sentence to be imposed.

Moreover, the JSIN analysis is deceiving. For the period FY 2020-2024, the sample is very small (241). The average and median sentence is based on all the sentences using §2G2.1, Offense Level 42, Criminal History Category I, not just the one comparable to the case at bar. The JSIN does not inform this Court which enhancements were applied to which sentences. Factors other than those used by Probation in the case at bar may have resulted in the same score, in which case, the JSIN is of no value determining comparable sentences.

Mr. Mercer urges the Court to find that a guideline sentence is substantially greater than necessary to achieve the goals of sentencing. A mandatory minimum sentence of 180 months is adequate and appropriate to satisfy the sentencing scheme.

18

## H.   THE NEED TO PROVIDE RESTITUTION PURSUANT TO 18 U.S.C. §3553(a)(7)

This factor is not applicable.

## IV.   <u>CONCLUSION</u>

In, *Rita, supra,* 338, the Supreme Court held that the district courts can conclude that the guideline sentence fails to reflect 18 U.S.C. §3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate "regardless." Sentencing is a difficult and nuanced art. It is easy to make it mechanical by woodenly applying the guideline range.

Sentencing should be an act of reason by the judge looking at a particular person, the circumstances of the crime this person has committed and then making a judgment. *United States v. Dominquez*, 296 F.3d 192, 196 n.7 (3rd Cir. 2002) ("The Guidelines do not require a judge to leave compassion and common sense at the door to a courtroom".); *United States v. Meyers*, 353 F. Supp. 2d 1026, 2017 (S.D. Iowa 2005) ("[i]f the 600-plus pages of the most recent set of sentencing guidelines have taught us anything, it is that punishment cannot be reduced to an algorithm."); *United States v. Biheiri*, 356 F. Supp. 2d 589 (E.D. Va. 2005) ("fashioning a just sentence cannot be reduced to a mere arithmetical exercise and that reliance solely on numbers, quantities, offense levels, criminal history

categories, and matrices produce an illusory precision that obscures the fact *that sentencing in the end, must involve the exercise of judgment*".) (Emphasis added).

While the Court's decision will be informed by statutory and case law, policy statements by the judiciary, congress and the department of judiciary, the arguments of the parties, the character letters by the people who know Mr. Mercer the best and Mr. Rosenberg's Report, the ultimate decision will be made by this Honorable Court. It is clear from the statutory framework and the mandatory minimum sentence required, notwithstanding the language of §3553(a), the primary purpose of sentencing in the case at bar will be punishment. Thus, the question before this Court is really how much punishment is enough.

For all the reasons set forth above, Mr. Mercer respectfully requests a sentence that is "sufficient but not greater than necessary" to comply with all the sentencing factors. Mr. Mercer respectfully and humbly submits a mandatory minimum sentence should be viewed by the Court as sufficient punishment, and an appropriate sentence.

Respectfully submitted,

*/s/ Michael A. Rataj*
MICHAEL A. RATAJ (P43004)
Attorney for Evan Mercer
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529

Dated: April 27, 2025

## <u>CERTIFICATE OF SERVICE</u>

Michael A. Rataj hereby states that on April 27, 2025, I electronically filed *Defendant's Sentencing Memorandum and Certificate of Service* with the Clerk of the Court using the ECF system which will send notification of such filing to all parties listed on the Electronic Mail Notice List.


*/s/ Michael A. Rataj*
MICHAEL A. RATAJ